**PORSCHE CARS NORTH AMERICA, INC., and Dr. Ing. H.C.F. Porsche AG, Plaintiffs,**

v.

**PORSCH.COM, et al., Defendants.**

No. Civ.A. 99–0006–A.

United States District Court, E.D. Virginia, Alexandria Division.

June 8, 1999.

John F. Anderson, Richards McGettigan Reilly & West, PC, Alexandria, VA, Gregory D. Phillips, Phillips & Anderson, Salt Lake City, UT, for plaintiffs.

James W. Pravel, Pravel Intellectual Property Law, PC, Alexandria, VA, Paul M. DeCicco, San Diego, CA, for defendants.

## MEMORANDUM OPINION

CACHERIS, District Judge.

At issue is whether the Court can exercise *in rem* jurisdiction to cancel Internet domain names that allegedly dilute protected trademarks, even though the Trademark Dilution Act would only appear to authorize *in personam* proceedings against those who registered the domain names in question. For the reasons given below, the Court will DISMISS the Complaint.

### Facts

The Internet is an electronic network that links millions of computers together so that they can communicate with each other. The World Wide Web is an electronic facility that enables people to view some of the information that is available through the Internet, and it is divided into individual "web sites"—much like individual books in an enormous library.

Each web site has an "internet protocol number"—e.g., "156.121.20.201"—that uniquely identifies it and that a person can "dial" in order to access the information contained therein. Because an internet protocol number can be difficult to remem-

ber, each web site usually has an alphanumeric "domain name" as well—e.g., "WWW.USCOURTS.GOV." *See Thomas v. Network Solutions, Inc.*, 176 F.3d 500, 502–04 (D.C.Cir.1999). The distinction between an internet protocol and a domain name roughly compares to the difference between the telephone number (such as "1–800–529–2665") and the mnemonic number (such as "1–800–LAW–BOOK") that a business might use in order to attract customers. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1325 (9th Cir.1998). This framework assumes that no two web sites should share the same internet protocol or the same domain name, and as a result, the federal government has designated a private company, Network Solutions, Inc. ("NSI"), to act as the exclusive registrar for the assignment of these unique identifiers. *See Thomas*, at 504–05.

Those who hope to find a particular web site rarely will know the right internet protocol number off hand, and will rely instead on its known or expected domain name—much in the way that a person might not know the telephone number for Holiday Inn hotels but might guess that dialing "1–800–HOL–IDAY" would suffice. As a result, companies that seek to advertise their products on web sites typically will ask NSI for domain names that mnemonically promote themselves and thereby increase the likelihood that people will be able to locate their presence on the Web. The Microsoft Corporation, for example, maintains a web site at "WWW.MICRO SOFT.COM"—presumably both to reinforce its brand identity and to attract customers more easily than with a less intuitive domain name such as "WWW. 185927852.COM."

Just as they can have several telephone numbers, companies can register multiple domain names in order to maximize the chances that customers will find their web site. But in so doing, companies often discover that NSI already has assigned some of those domain names to others.

This situation can arise because two parties happen to use the same marks in their business, *see Teletech Customer Care Management (California), Inc. v. Tele-Tech Co.*, 977 F.Supp. 1407 (C.D.Cal.1997), because one party has purchased a prized domain name with the goal of reselling it to the other party at a higher price, *see Intermatic Inc. v. Toeppen*, 947 F.Supp. 1227 (N.D.Ill.1996), or because one party hopes to use a confusingly-similar domain name in order to siphon off customers that the other party has cultivated for itself, *see Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, 33 F.Supp.2d 488 (E.D.Va.1999).

The Plaintiffs, Porsche Cars North America, Inc. and Dr. Ing. h.c.F. Porsche AG (collectively referred to as "Porsche"), have encountered precisely this dilemma. Porsche markets cars, goods, accessories, and services under the "Porsche" and "Boxster" names. Although it has registered "PORSCHE.COM" and "PORSCHE–USA.COM" as the domain names for its web site, it has discovered that others have registered 128 additional domain names, such as "PORSCH.COM" and "BOXSTER.COM," that similarly implicate and that arguably dilute the strength of its "Porsche" and "Boxster" marks. Some of the domain names are in use while others are dormant, but the fact remains that none of them channels consumers to Porsche's web site.

Rather than filing an *in personam* action against those who registered the allegedly offending domain names, Porsche has responded by initiating an *in rem* proceeding against the domain names themselves. In order to facilitate this procedure, NSI has surrendered the underlying registration certificates to the Court for a determination of their status, and with the *res* now in limbo, the Complaint asks the Court (1) to conclude that the domain names violate the Trademark Dilution Act, *see* 15 U.S.C. § 1125(c); and (2) to issue an order canceling their registration certificates or reassigning them to Porsche.

Two of the domain names at issue— "PORSCHE.NET" and "PORSCHE-CLUB.NET"—have appeared through counsel and move to dismiss for lack of jurisdiction and failure to state a claim.

### Standard of Review

A Motion to Dismiss for lack of jurisdiction requires the Court to weigh the evidence and satisfy itself of its power to hear a case. *See Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995). Although conclusory arguments about the merits will not suffice to defeat jurisdiction, *see Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the Plaintiff bears the burden of proving that jurisdiction actually exists, and the Court must dismiss the action if the facts so require. *See Richmond, Fredericksburg & Potomac Ry. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982).

Assuming that jurisdiction exists, a challenge for failure to state a claim requires the Court to test the legal sufficiency of a complaint. *See Randall v. U.S.,* 30 F.3d 518, 522 (4th Cir.1994). Such motions "should be granted only in very limited circumstances," *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989), and a complaint will survive as long as it sets out sufficient facts for the Court to infer that each element of a cause of action is present, *see Wolman v. Tose,* 467 F.2d 29, 33 n. 5 (4th Cir.1972). Even so, the Court must dismiss a case when it " 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *De Sole v. U.S.,* 947 F.2d 1169, 1177 (4th Cir.1991) (quoting *Coakley & Williams, Inc. v. Shatterproof Glass Corp.,* 706 F.2d 456, 457 (4th Cir.1983)).

### Analysis

#### I. Subject Matter Jurisdiction

"PORSCHE.NET" and "PORSCHE-CLUB.NET" first raise a challenge to subject matter jurisdiction, arguing that Porsche's case is unripe and that the Complaint fails to present a federal question. The Court will consider each of these issues in turn.

##### a. Ripeness

Because Article III of the Federal Constitution defines judicial power in terms of the authority to adjudicate actual cases or controversies, *see* U.S. Const. art. III, § 2, federal courts have long refused to hear matters that are not ripe for immediate review, *see Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). Advisory opinions are not well-taken, and, "[t]o invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury [that is] traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis,* 494 U.S. at 477, 110 S.Ct. 1249.

Porsche's Complaint more than suffices to meet this standard. "PORSCHE.NET" and "PORSCHECLUB.NET" are registered domain names that Porsche cannot use because NSI already has assigned them away to others. Both domain names are dormant in the sense that they have no connection to other existing web sites, but the mere act of registration creates an immediate injury by preventing Porsche from utilizing those domain names itself in order to channel consumers to its own web site. Customers might try to contact Porsche through "PORSCHE.NET," for example, only to find that they have reached a "dead end" on the Web and then to conclude that the strength of Porsche's brand name is not as great as they first thought.

Whether the Trademark Dilution Act would grant relief under these circumstances is a question on the merits, but within the meaning of the ripeness doctrine, Porsche has alleged an actual and immediate injury that arises out of the registration of these allegedly offending domain names. *Cf. Standard Oil Co. of New Mexico v. Standard Oil Co. of Cali-*

*fornia,* 56 F.2d 973, 975 (10th Cir.1932) (concluding that the defendant's adoption of a corporate name that resembled the plaintiff's, constituted an act of unfair competition, even though the defendant had merely reserved the name in its articles of incorporation without actually beginning to promote that name in commerce). Against this background, an actual case or controversy appears to exist so as to permit judicial review.

### b. Federal Question Jurisdiction

■ Federal question jurisdiction is equally clear. 28 U.S.C. § 1332 provides federal courts with original jurisdiction to hear civil actions that arise under federal law. In order to trigger this provision, a complaint must implicate a federal question on its face, either by pleading a cause of action that federal law directly creates, *see Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), or by raising a claim that federal law indirectly affects, *see Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 199, 41 S.Ct. 243, 65 L.Ed. 577 (1921).

Porsche's Complaint specifically asks for relief under the Federal Trademark Dilution Act. *See* 15 U.S.C. § 1125(c). The statute creates the cause of action at issue and raises a number of federal questions such as (1) whether the "Porsche" and "Boxster" names are the types of "famous mark[s]" that Congress intended to protect; (2) whether registration of the allegedly offending domain names constitutes an inappropriate "commercial use" of these marks; and (3) whether such use dilutes their "distinctive qualit[ies]." *Id.* Under these circumstances, the Complaint clearly falls within the Court's subject matter jurisdiction even if challenges can be made on the merits.

### II. Personal Jurisdiction

■ The Defendants also contend that the Court lacks personal jurisdiction over the domain names at issue because the Trademark Dilution Act does not permit *in rem* proceedings.

Rule 4(n) of the Federal Rules of Civil Procedure authorizes federal courts to exercise *in rem* jurisdiction over property within their domain, either (1) if a federal statute so provides; or (2) if state law so permits and personal jurisdiction over the property owner cannot be had. Rule 4(n)(1) is the only conceivable basis for *in rem* jurisdiction in this case because the Complaint only seeks relief under a federal statute, and because in any event, neither the Virginia legislature nor the Virginia courts have recognized claims for trademark dilution under state law. *See Circuit City Stores, Inc. v. OfficeMax, Inc.,* 949 F.Supp. 409, 418 (E.D.Va.1996).

Even so, Rule 4(n)(1) applies only if the Trademark Dilution Act[1] under which

---

1. 15 U.S.C. § 1125(c) provides, in pertinent part:

"(1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection. In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to—
   (A) the degree of inherent or acquired distinctiveness of the mark;
   (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
   (C) the duration and extent of advertising and publicity of the mark;
   (D) the geographical extent of the trading area in which the mark is used;
   (E) the channels of trade for the goods or services with which the mark is used;
   (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
   (G) the nature and extent of use of the same or similar marks by third parties; and
   (H) whether the mark was registered under the Act of March 3, 1881, or the Act of

Porsche has sued can be read to permit *in rem* actions that name the allegedly offending marks at issue without suing the persons who use them. Although there are no published decisions that address the issue directly, at least one federal court has expressed serious concern in this regard. *See Sterling Consulting Corp., Inc. v. The Indian Motorcyle Trademark,* 1997 WL 827450, at *1 (D.Colo. Sept.5, 1997). The reason for this concern is clear—even though the statute does not expressly preclude *in rem* lawsuits, its language speaks strongly in favor of allowing *in personam* actions alone.

Rather than authorizing an injunction against a diluting mark itself, for example, the Act only provides a remedy against another "person's" commercial use of that mark. *See id.* § 1125(c)(1). The statute similarly contemplates the assessment of money damages against a "person" who willfully dilutes a famous mark, because a mark itself logically cannot be made to pay damages. *See id.* § 1125(c)(2). The Act defines a "person" to include natural persons as well as "firm[s], corporation[s], union[s], association[s], [and] other organization[s]"—without including "marks" within this definition. 15 U.S.C. § 1127.

Had Congress intended the Trademark Dilution Act to permit *in rem* actions against diluting marks, it easily could have drafted the statutory language to achieve that result. The Lanham Act, for example, proscribes the importation of goods that have a false designation of origin, not by barring "persons" from importing them but rather by specifying that the "goods [themselves] ... shall not be imported into the United States." 15 U.S.C. § 1125(b). The Tariff Act analogously empowers the International Trade Commission to combat the importation of goods distributed through unfair methods of competition, either by issuing cease and desist orders against those responsible *or* by issuing exclusion of entry orders against the goods themselves. *See* 19 U.S.C. § 1337(d) & (f). In marked contrast to both of these statutes, the Trademark Dilution Act speaks only of remedies against "persons" who commit trademark dilution.

■ In any event, to construe the Trademark Dilution Act so as to permit *in rem* actions against allegedly diluting marks would needlessly call the constitutionality of the statute into doubt. Although *in rem* proceedings purport to affect nothing more than the disposition of property, they necessarily affect the interests of persons as well. *See Shaffer v. Heitner,* 433 U.S. 186, 207, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (quoting Restatement (Second) of Conflict of Laws § 56 Introductory Note (1971)). As a result, courts generally cannot exercise *in rem* jurisdiction to adjudicate the status of property unless the Due Process Clause would have permitted *in personam* jurisdiction over those who have an interest in the *res. See Shaffer,* 433 U.S. at 207, 97 S.Ct. 2569.

■ In light of this constitutional requirement, the Trademark Dilution Act cannot be read to permit *in rem* actions against allegedly diluting marks without regard to whether *in personam* jurisdiction could have been exercised against those who use those marks in commerce. But Porsche's Complaint would have the Court do precisely that—by validating an *in rem* proceeding that would cancel or reassign certain domain names, merely because NSI maintains the underlying registration certificates within this district, without regard to the interests of those

---

February 20, 1905, or on the principal register.

(2) In an action brought under this subsection, the owner of the famous mark shall be entitled only to injunctive relief unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner of the famous mark shall also be entitled· to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity."

who registered them, and even though *in personam* jurisdiction against registrants who live elsewhere might violate due process. The Court cannot presume that Congress intended the Trademark Dilution Act to operate in a way that so blindly ignores "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

Porsche correctly observes that some of the domain names at issue have registrants whose identities and addresses are unknown and against whom *in personam* proceedings might be fruitless. But most of the domain names in this case have registrants whose identities and addresses are known, and who rightly would object to having their interests adjudicated *in absentia.* The Due Process Clause requires at least some appreciation for the differences between these two groups, and Porsche's pursuit of an *in rem* remedy that fails to differentiate between them at all is fatal to its Complaint. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 317–18, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (requiring an *in personam* proceeding with service by mail to the known beneficiaries of a disputed common trust, even if notice by publication might suffice as to unknown claimants).

Because the language of the Trademark Dilution Act does not appear to permit *in rem* actions against allegedly diluting marks, and because a contrary reading of the statute would unnecessarily put its constitutionality in doubt, *see Johnson v. Mayor and City Council of Baltimore,* 731 F.2d 209, 213 n. 13 (4th Cir.1984), the Court must conclude that the Complaint should be dismissed for lack of personal jurisdiction.

### Conclusion

For the foregoing reasons, the Court will GRANT the Motion to Dismiss that the Defendants "PORSCHE.NET" and "PORSCHECLUB.NET" have filed. Because all of the Defendants are similarly-situated, the Complaint will be DISMISSED in its entirety as to all of the parties in this case.