310 F.3d 293
 MATTEL, INC., Plaintiff-Appellant,
v.
BARBIE-CLUB.COM, Barbie21.Com, Barbieborza.Com, Barbiedoll-A.Com, Barbiegallery.Com, Barbiej.Com, Barbiepchome.Com, Barbiesecrets.Com, Captainbarbie.Com, Missbarbie.Com, Princessbarbie.Com, Quierokillerbarbies.Com, Quierobarbie.Com, Thebarbie.Com, Thebarbys.Com, Casinohotwheel.Com, Casinohotwheels.Com, Hotwheelcasino.Com, Hotwheelscasino.Com, Thehotwheelcasino.Com, Hotwheelscafe.Com, Hotwheelscanada.Com, Hotwheelshome.Com, Hotwheelspchome.Com, Hotwheelsusa.Com, Hotwheelsweb.Com, Ourhotwheels.Com, Coolhotwheels.Com, Ilovehotwheels.Com, Ihotwheels.Com, Hotwheelswanted.Com, Buymatchbox.Com, Coolmatchbox.Com, Ilovematchbox.Com, Imatchbox.Com, Matchboxintros.Com, Matchboxonline.Com, Ourmatchbox.Com, Mymatchbox.Com, Matellsoftware.Com, Matellsoftware.Net, Matellsoftware.Org, Mattels.Com, Mattle.Net, Mastertheuniverse.Com, See-And-See. Com, Seensay.Net, Seensee.Net, Tycoltd.Com, Viewermaster.Com, Viewmasters.Net, Barbie21century.Com, and Mattle.Com, Defendants-Appellees.
 Docket No. 01-7680.
 United States Court of Appeals, Second Circuit.
 Argued: July 17, 2002.
 Decided: November 7, 2002.
 
 William Dunnegan, Perkins & Dunnegan, New York, NY, for Plaintiff-Appellant.
 Michael Aschen, Abelman, Frayne & Schwab, New York, NY, for Defendant-Appellee captainbarbie.com.
 Before CABRANES, STRAUB, and SOTOMAYOR, Circuit Judges.
 SOTOMAYOR, Circuit Judge.
 
 
 1
 Plaintiff Mattel, Inc. ("Mattel") appeals from orders entered by the United States District Court for the Southern District of New York (Cote, J.) on May 2 and May 17, 2001, dismissing Mattel's claims against the defendant domain names (collectively, the "Domain Names") for lack of in rem jurisdiction under the Anticybersquatting Consumer Protection Act of 1999 ("ACPA"), 15 U.S.C. § 1125(d). We affirm, holding that (1) subsection (d)(2)(A) of the ACPA provides for in rem jurisdiction only in the judicial district in which the registrar, registry, or other domain-name authority that registered or assigned the disputed domain name is located, and (2) subsection (d)(2)(C) does not provide an additional basis for in rem jurisdiction.
 
 BACKGROUND
 I. Facts
 
 2
 The underlying facts are not in dispute. Mattel owns registered trademark rights to "Barbie," "Hot Wheels," and other well-known marks. To protect these marks against allegedly unlawful domain-name registration and use, Mattel filed this in rem action against the Domain Names in the Southern District of New York on November 15, 2000, seeking cancellation or transfer of the Domain Names under the ACPA, 15 U.S.C. § 1125(d).[1] The Domain Names are fifty-seven Internet addresses that were registered with domain-name registrars in the United States by various persons or entities over which Mattel alleged that it could not obtain personal jurisdiction. Because Mattel could not sue in personam, it sought to avail itself of the in rem provisions of the ACPA, which permit the owner of a mark to bring suit directly against a domain name that "violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c) of this section." 15 U.S.C. § 1125(d)(2)(A)(i).
 
 
 3
 A domain name is a unique string of characters or numbers that typically is used to designate and permit access to an Internet website. See Sporty's Farm L.L.C. v. Sportsman's Market, Inc., 202 F.3d 489, 492-93 (2d Cir.2000). The widespread use of domain names in recent years has been accompanied by a phenomenon known as "cybersquatting," which involves
 
 
 4
 the registration as domain names of well-known trademarks by non-trademark holders who then try to sell the names back to the trademark owners. Since domain name registrars do not check to see whether a domain name request is related to existing trademarks, it has been simple and inexpensive for any person to register as domain names the marks of established companies. This prevents use of the domain name by the mark owners, who not infrequently have been willing to pay "ransom" in order to get "their names" back.
 
 
 5
 Id. at 493 (citing H.R.Rep. No. 106-412, at 5-7 (1999); S.Rep. No. 106-140, at 4-7 (1999)). In order to combat such bad-faith registration or use of domain names, Congress enacted the ACPA as a supplement to the federal trademark statute. The ACPA applies to all domain names registered before, on, or after the date of enactment, November 29, 1999. Pub.L. No. 106-113 tit. III § 3010, 113 Stat. 1501, 1501A-552 (1999).
 
 
 6
 Defendant-appellee captainbarbie.com ("captainbarbie.com") — the only defendant to submit a brief on this appeal — is typical of the Domain Names. Captainbarbie.com is registered with Bulkregister.com, a domain-name registrar[2] with offices in Baltimore, Maryland.[3] Most of the other domain names were registered with domain-name authorities in Maryland, Virginia, or California. Four of the Domain Names (matellsoftware.com, matellsoftware.net, matellsoftware.org, and masteroftheuniverse.com) were registered with Register.com, a registrar with its principal office in New York City, within the Southern District of New York.
 
 
 7
 Shortly after filing this action in the Southern District, Mattel arranged to have "registrar's certificates" for each of the Domain Names sent by their respective domain-name authorities and deposited with the district court. Under the ACPA, a registrar's certificate is understood to constitute a "document[] sufficient to establish [a district court's] control and authority regarding ... the use of the domain name." 15 U.S.C. § 1125(d)(2)(C)(ii). Depositing such documentation with the district court also serves to signify, in the manner of interpleader, the registrar's disinterested surrender of the disputed property to the adjudicative authority of the court. See id. § 1125(d)(2)(D); see also FleetBoston Fin. Corp. v. Fleetbostonfinancial.com, 138 F.Supp.2d 121, 126 (D.Mass.2001) ("[I]t appears the deposit of registration documents was designed to relieve registration authorities of the burdens of appearing in domain name dispute litigation by formalizing a procedure through which those authorities can simply deposit the disputed intangible in a manner not unlike interpleader.").
 
 II. The Proceedings Below
 A. The Preliminary Conference
 
 8
 The proceedings below were complicated by an unfortunate but ultimately innocuous confusion of terminology between "subject matter jurisdiction" and "in rem jurisdiction." The confusion was initiated by counsel for captainbarbie.com at the preliminary conference held on March 30, 2001, when counsel raised a "concern ... about the subject matter jurisdiction of the court" and then proceeded to argue that Mattel's broad interpretation of § 1125(d) (the in rem jurisdiction provision) was an incorrect invocation of the "subject matter jurisdiction [sic] of the court." Both parties as well as the court continued to refer to "subject matter jurisdiction" instead of "in rem jurisdiction" throughout the conference.
 
 
 9
 The record shows that, muddled as their terminology was, the parties and the court essentially understood the substance of the two concepts. Although the district judge announced that it thought to satisfy itself as to the "issue of subject matter jurisdiction," the judge plainly meant that Mattel should address the specific issues regarding in rem jurisdiction that captainbarbie.com had raised. Complying with the judge's request with studied literalness while ignoring her manifest intention, Mattel submitted a brief demonstrating that the ACPA conferred federal-question subject matter jurisdiction on the court. After receiving captainbarbie.com's response brief, which substantively addressed the issue of in rem jurisdiction, the district court dismissed the case for lack of "in rem jurisdiction under 15 U.S.C. § 1125(d)." Mattel, Inc. v. Barbie-Club. Com, No. 00 Civ. 8705, 2001 WL 436207, at *3 (S.D.N.Y. May 1, 2001). Mattel neither sought to file a further brief in reply to captainbarbie.com's response brief nor moved for reconsideration or reargument on the issue of in rem jurisdiction. In a post-opinion brief responding to specific questions posed by the court, Mattel did not challenge the court's disposition of the jurisdictional question and made no mention of being surprised that in rem jurisdiction rather than subject matter jurisdiction was the ground of dismissal.
 
 B. The District Court Decision
 
 10
 The district court's opinion, which states that captainbarbie.com "has raised the issue of whether this Court has subject matter jurisdiction over this in rem action,"[4] Mattel, Inc., 2001 WL 436207, at *1, analyzes in rem jurisdiction under the ACPA and concludes by dismissing the action because "this Court lacks in rem jurisdiction under 15 U.S.C. § 1125(d) over defendant captainbarbie.com, and all other defendants in this action that do not have a domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name located within this district."[5] Id. at *3.
 
 
 11
 The district court reached this conclusion by determining that: (1) § 1125(d)(2)(A) of the ACPA does not allow in rem jurisdiction "except in the judicial district in which the domain name registry, registrar, or other domain name authority is located"; (2) § 1125(d)(2)(C), which Mattel argued provides an additional basis for in rem jurisdiction in any other judicial district where a registrar's certificate or similar documentation has been deposited with the court, exists simply "to facilitate the continuation of litigation in one of the districts identified in subparagraph (2)(A)"; and (3) interpreting § 1125(d)(2)(C) as a basis for in rem jurisdiction "would run afoul of the due process clause of the Fifth Amendment of the United States Constitution." Mattel, Inc., 2001 WL 436207, at *2 (quoting FleetBoston, 138 F.Supp.2d at 125, 129, 135).
 
 
 12
 The district court dismissed the action in orders entered on May 2 and May 17, 2001. This timely appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 DISCUSSION
 I. Standard of Review
 
 13
 We review de novo a dismissal for lack of in rem jurisdiction. LiButti v. United States, 178 F.3d 114, 122 (2d Cir.1999); Dluhos v. The Floating & Abandoned Vessel, 162 F.3d 63, 68 (2d Cir.1998). On de novo review, "the burden of proving jurisdiction is on the party asserting it," Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir.1994), although, prior to discovery, this burden is a lenient one, inasmuch as "a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction," Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566-67 (2d Cir.1996).
 
 
 14
 II. Whether the District Court Dismissed for Lack of Subject Matter Jurisdiction
 
 
 15
 On appeal, as below, Mattel seeks to make subject matter jurisdiction an issue and argues that the district court erred in dismissing the action for lack of "subject matter jurisdiction."
 
 
 16
 As noted above, the district court did not dismiss this action for lack of subject matter jurisdiction, despite the court's inadvertent use of that term at the preliminary conference and in its written orders. Nor did captainbarbie.com ever argue, in substance, that the court lacked subject matter jurisdiction over this federal-question action. Subject matter jurisdiction is clearly satisfied here because Mattel's claims are founded upon a federal statute that confers subject matter jurisdiction on the district and appellate courts. See 15 U.S.C. § 1121(a) ("The district ... courts of the United States shall have original jurisdiction and the courts of appeal of the United States ... shall have appellate jurisdiction, of all actions arising under [the federal trademark statute, which includes the ACPA], without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."); see also 28 U.S.C. § 1331 (federal question jurisdiction), § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... trademarks."); Porsche Cars N. Am., Inc. v. Porsche.Net, 302 F.3d 248, 255 (4th Cir.2002) ("[Plaintiff trademark owner's] assertion of substantive claims under federal statutes, the ACPA and the trademark-dilution statute, invokes a federal court's subject-matter jurisdiction....").
 
 
 17
 III. Whether the District Court Properly Dismissed for Lack of In Rem Jurisdiction
 
 
 18
 The issue of in rem jurisdiction, which is one of first impression in this Circuit, presents greater complexities. The ACPA, under 15 U.S.C. § 1125(d)(1), allows a trademark owner to pursue an in personam civil action against an alleged trademark infringer. If the court finds that in personam jurisdiction is not available or that the infringer cannot be located, § 1125(d)(2) allows the trademark owner to proceed against the domain name itself. Id. § 1125(d)(2)(A)(ii). This in rem jurisdiction was provided in part to address the situation where "a non-U.S. resident cybersquats on a domain name that infringes upon a U.S. trademark." 145 Cong. Rec. H10,823, H10,826 (Oct. 26, 1999) (section-by-section analysis of ACPA); see also Standing Stone Media, Inc. v. Indiancountrytoday.com, 193 F.Supp.2d 528, 532 (N.D.N.Y.2002) (noting that the ACPA's in rem jurisdiction was provided "to counter the unlawful activity of foreign-resident cybersquatters").
 
 
 19
 The registrant of captainbarbie.com is an Australian entity over which Mattel alleged in its complaint, and the district court apparently found, that Mattel was "unable to obtain personal jurisdiction."[6] Consequently, Mattel sought to obtain in rem jurisdiction over captainbarbie.com pursuant to § 1125(d)(2)(A)(ii)(I). Because the parties effectively agree that in rem jurisdiction is available in some judicial district within the United States, we turn to the question of whether the Southern District of New York is a proper judicial district for entertaining this in rem action. To answer that question, we analyze the language and structure of § 1125(d)(2) as well as the legislative history of the ACPA.
 
 
 20
 A. The Language and Structure of § 1125(d)(2)
 
 
 21
 The parties dispute the meaning and function of two subsections of 15 U.S.C. § 1125(d)(2). Subsection (d)(2)(A) provides that an in rem civil action may be filed "in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located ...." Id. § 1125(d)(2)(A). Subsection (d)(2)(C) states that the "situs" of a domain name in an in rem action shall be deemed to be
 
 
 22
 in the judicial district in which (i) the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; or (ii) documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court.
 
 
 23
 Id. § 1125(d)(2)(C). Mattel argues that the latter subsection supplements and effectively expands the jurisdictional grant contained in the former subsection by permitting suit to be brought in any judicial district in which sufficient documents evidencing the disputed domain name are deposited with the district court. Accordingly, Mattel contends that it was simply following statutory instructions when it opted to file suit in the Southern District of New York and then arranged to have the Maryland registrar deposit domain-name documentation with that court. Captainbarbie.com argues, however, that subsection (d)(2)(A) provides the sole basis for in rem jurisdiction under the ACPA, and that subsection (d)(2)(C) simply describes the legal situs of the domain name once an in rem action has been properly commenced in the judicial district in which the domain-name registrar or a similar authority is located.
 
 
 24
 We begin, as we must, with a plain-meaning analysis of the language and structure of § 1125(d)(2). Williams v. Taylor, 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); Senator Linie Gmbh & Co. Kg v. Sunway Line, Inc., 291 F.3d 145, 154 (2d Cir.2002); see also Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) ("There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." (internal quotation marks omitted)). The plain meaning of § 1125(d)(2) suggests that an in rem action may be brought only in that judicial district in which the domain name registrar, domain name registry or other authority that registered or assigned the domain name is located. The structure of § 1125(d)(2) is fully consistent with this plain meaning. A careful inspection of § 1125(d)(2) reveals that the sequence of its subsections generally traces the progress of an in rem action from the filing of suit and the service of process, id. § 1125(d)(2)(A)-(B), to the securing of the court's control and authority over the domain name, after suit has been commenced, through measures that ensure that the disputed property's[7] legal situs is within the judicial district, id. § 1125(d)(2)(C), to the granting of remedies against a domain name that has been found liable for cybersquatting, id. § 1125(d)(2)(D)(i). Section 1125(d)(2) then concludes by setting forth steps to be taken and actions to be avoided by the registrar or other domain-name authority if it wishes to avoid exposing itself to liability. Id. § 1125(d)(2)(D)(i)-(ii).
 
 
 25
 Thus, the arrangement of § 1125(d)(2) separates, conceptually and chronologically, the prescriptive jurisdiction-granting language of subsection (d)(2)(A) from the descriptive language of legal situs in subsection (d)(2)(C). Cf. FleetBoston, 138 F.Supp.2d at 128 (holding that § 1125(d)(2) "assumes a temporal sequence that makes it impossible for [§ (2)(C)] to provide jurisdiction independent of subparagraph (2)(A)"). Moreover, while subsection (d)(2)(A) speaks of "fil[ing] an in rem civil action," subsection (d)(2)(C), which begins with the words "[i]n an in rem action under this paragraph," plainly presupposes that such an action has already been filed in a judicial district referred to in subsection (d)(2)(A), and then proceeds to describe the domain name's legal situs during that action. Thus, by the time we reach subsection (d)(2)(C), we are already "in" litigation that was commenced pursuant to subsection (d)(2)(A). Nothing on the face of the statute suggests that a plaintiff may alter this procedural sequence, as Mattel did, by filing suit in a judicial district of its own choosing, and then attempting unilaterally to relocate the domain name's legal situs to buttress that choice.
 
 
 26
 In addition to the plain meaning of the statute's language, the canon of statutory interpretation known as generalia specialibus non derogant — general provisions do not qualify specific ones — is applicable here. See Senator Linie Gmbh, 291 F.3d at 157. It would be odd for Congress to have taken pains to enact subsection (d)(2)(A) with its specific procedure for filing an in rem action "in the judicial district in which the domain registrar ... is located," only to qualify, and indeed nullify, that circumscribed requirement by effectively creating nationwide in rem jurisdiction in subsection (d)(2)(C). Such a reading of subsection (d)(2)(C) would have the effect of rendering the language of subsection (d)(2)(A) superfluous — a result frowned upon by courts. See Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)); Washington Mkt. Co. v. Hoffman, 101 U.S. 112, 115-16, 25 L.Ed. 782 (1879) ("As early as in Bacon's Abridgment, sect. 2, it was said that `a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"); see also Cable News Network L.P., L.L.L.P. v. CNNews. com, 162 F.Supp.2d 484, 489 n. 15 (E.D.Va. 2001) ("[W]ere both Section 1125(d)(2)(A) and Section 1125(d)(2)(C) [of the ACPA] to be read as providing in rem jurisdiction, all of Section 1125(d)(2)(A) and portions of Section 1125(d)(2)(C) would be rendered redundant, an impermissible result."); FleetBoston, 138 F.Supp.2d at 126 ("[T]here is redundancy in plaintiff's position... because its broad reading of subparagraph (d)(2)(C) [to permit jurisdiction other than in the district of the domain name's registration] would essentially consume the narrower reach of subparagraph (d)(2)(A).").
 
 B. The Legislative History of the ACPA
 
 27
 The legislative history of the ACPA underscores the temporal sequencing that we have identified in § 1125(d)(2):
 
 
 28
 When a court of appropriate jurisdiction receives a complaint filed pursuant to this section, the court will notify the registrar, registry, or other authority who shall expeditiously deposit with the court documents to establish control and authority regarding the disposition of the registration and use of the domain name.
 
 
 29
 145 Cong. Rec. at H10,826. Congress's reference to "a court of appropriate jurisdiction receiv[ing] a complaint filed pursuant to this section" would be practically meaningless if it were read to suggest that the filing of a complaint in any district court in the United States could render that court one of "appropriate jurisdiction." Clearly, "appropriate jurisdiction" is a status that precedes and is independent of the filing of the complaint, and is conferred by the presence of the registrar or other domain-name authority within that judicial district. Subsection (d)(2)(D) of the ACPA, echoing the language of subsection (d)(2)(A), reflects this intention of Congress:
 
 
 30
 Upon receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a mark in a United States district court under this paragraph, the domain name registrar, domain name registry, or other domain name authority shall expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court.
 
 
 31
 15 U.S.C. § 1125(d)(2)(D)(i)(I) (emphasis added). Thus, both the language of the statute and its legislative history indicate that in rem jurisdiction is a preexisting fact determined by the location of the disputed domain name's registrar or a similar authority, and that the subsequent deposit of sufficient documents with a court of appropriate jurisdiction confirms the domain name's legal situs as being in that judicial district for purposes of the litigation.
 
 
 32
 Because we base our conclusion on an analysis of the language and structure of § 1125(d)(2), it is unnecessary to reach any constitutional questions. Cf. United States v. Five Gambling Devices, 346 U.S. 441, 448, 74 S.Ct. 190, 98 L.Ed. 179 (1953) ("The principle is old and deeply imbedded in our jurisprudence that this Court will construe a statute in a manner that requires decision of serious constitutional questions only if the statutory language leaves no reasonable alternative."). Nevertheless, we note, as part of our analysis of the legislative history, that in enacting subsection (d)(2)(A), Congress plainly sought to allay any concerns that the ACPA's in rem jurisdiction might offend due process or principles of international comity:
 
 
 33
 This type of in rem jurisdiction still requires a nexus based upon a U.S. registry or registrar [that] would not offend international comity.... Finally, this jurisdiction does not offend due process, since the property and only the property is the subject of the jurisdiction, not other substantive personal rights of any individual defendant.
 
 
 34
 H.R.Rep. No. 106-412, at 14 (1999). This language makes it clear that Congress considered the "registry or registrar" to provide a "nexus" for in rem jurisdiction under the ACPA. Nowhere does the legislative history suggest that this nexus might be supplied by domain-name documentation alone. Rather, it is the presence of the domain name itself — the "property [that] is the subject of the jurisdiction" — in the judicial district in which the registry or registrar is located that anchors the in rem action and satisfies due process and international comity.
 
 
 35
 The legislative history also shows that Congress conceived of § 1125(d)(2) as authorizing the type of in rem proceeding that, in contrast to "quasi in rem `attachment' jurisdiction," was found by the Supreme Court in Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), to present few if any due process concerns.[8] 145 Cong. Rec. S14,696, 14,714 (Nov. 17, 1999) (section-by-section analysis of the ACPA); see also 145 Cong. Rec. H11,769, 11,799 (Nov. 9, 1999) (conference report on H.R. 1554) (same). The Court in Shaffer observed that
 
 
 36
 when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest.
 
 
 37
 Shaffer, 433 U.S. at 207-08, 97 S.Ct. 2569; see also Chapman v. Vande Bunte, 604 F.Supp. 714, 716-17 (E.D.N.C.1985) ("In a true in rem proceeding, in order to subject property to a judgment in rem, due process requires only that the property itself have certain minimum contacts with the territory of the forum."); cf. 145 Cong. Rec. at S14,714 (citing these passages from Shaffer and Chapman, and stating that "the [ACPA] reinforces the view that in rem jurisdiction has continuing constitutional vitality"); see also 145 Cong. Rec. at H11,799 (same).
 
 
 38
 In sum, we find that the legislative history of the ACPA reveals Congress's concern to establish a circumscribed basis for in rem jurisdiction that is grounded in the "nexus" provided by the registrar or other domain-name authority having custody of the disputed property. This congressional solicitude is fully consistent with what we find to be the plain meaning of § 1125(d)(2)(A): that an in rem action may be brought only "in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located."[9]
 
 
 39
 C. The Role of Subsection (d)(2)(C) Within the Statutory Scheme
 
 
 40
 Mattel contends that if subsection (d)(2)(A) required a trademark owner to commence an in rem action only in the judicial district in which the domain-name registrar or a similar authority is located, then subsection (d)(2)(C)(ii) would be rendered "meaningless" because subsection (d)(2)(C)(i) "would always apply." Another way of phrasing Mattel's argument is to ask why Congress chose to conjoin subsections (d)(2)(C)(i) and (d)(2)(C)(ii) by "or" instead of "and" — the more logical choice, at first glance, if Congress's intention had been to confine in rem litigation to the judicial district of registration.[10] Assuming, as we must, that Congress's choice of the disjunctive carries significance, see Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise ...."), we find no inconsistency between the implied possibility of more than one domain-name situs under subsection (d)(2)(C) and the clear limitation of in rem jurisdiction to one judicial district under subsection (d)(2)(A). Mattel's error is in assuming that subsections (d)(2)(A) and (d)(2)(C) both address jurisdiction. They do not. We have already observed that the former subsection is the operative jurisdiction-granting provision within § 1125(d)(2), while the latter serves to describe the legal situs of the disputed property for purposes of securing the district court's control and authority over that property during the litigation. Cf. Cable News Network, 162 F.Supp.2d at 489 n. 15 (holding that subsection (d)(2)(C) "does not confer in rem jurisdiction" but merely describes the domain name's legal situs). Moreover, as noted above, subsections (d)(2)(A), (d)(2)(C), and (d)(2)(D) work together to indicate that the legal situs of a domain name must be a judicial district in which an in rem action was properly commenced.
 
 
 41
 It is not difficult to imagine scenarios in which the disjunctive "or" in subsection (d)(2)(C) might become meaningful.[11] Suppose, for example, that an in rem action is properly commenced by the filing of a complaint in the Southern District of New York, where the disputed domain name's registrar is located. Prior to depositing documentation with the district court pursuant to subsection (d)(2)(D), however, the registrar relocates to the Northern District of Oklahoma, effectively removing the subject property from the Southern District.[12] The "or" in subsection (d)(2)(C) recognizes that the action could continue in the Southern District of New York once the registrar had dispatched documents from Oklahoma sufficient to secure the Southern District as the legal situs of the domain name.[13] See Standing Stone Media, 193 F.Supp.2d at 535 ("[S]ubsection (d)(2)(C) may also be read as a savings provision in the event that the registrar of a domain name moves out of the judicial district where the action was commenced, goes out of business or sells its interests to another company in the time period between the filing of the complaint and the deposit of the required certificates of registration.").
 
 
 42
 Suppose, again, that the disputed domain name's "registrar" is located in the Southern District of New York, but the domain name's "registry" is based in the Northern District of Oklahoma.[14] The trademark owner has properly filed an in rem action in the Southern District of New York, where "the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located," 15 U.S.C. § 1125(d)(2)(A) (emphasis added), only to discover that the Oklahoma registry, not the New York registrar, is the entity that maintains and issues official records regarding domain-name registration. Rather than refiling the in rem action in the Northern District of Oklahoma, the plaintiff or the court, supported by the language of subsection (d)(2)(C), could simply see to it that the Oklahoma registry deposited documentation sufficient to establish the domain name's legal situs within the Southern District of New York. Cf. Fleet-Boston, 138 F.Supp.2d at 125 ("Subparagraph (2)(C), which defines the situs of the domain name either in the judicial district of the domain name registrar, registry, or other domain name authority ((C)(i)), or where documents establishing control of the registration are deposited with the court, ((C)(ii)), exists to facilitate the continuation of litigation in one of the districts identified in subparagraph (2)(A)." (emphasis in original)).
 
 
 43
 Each of these hypothetical scenarios is consistent with the language and structure of § 1125(d)(2), which require that an in rem action under the ACPA be commenced in the judicial district in which the subject domain name's registrar, registry, or other authority is located, followed by deposit of sufficient domain-name documentation with the court in that district. No scenario consistent with this statutory scheme, however, would permit an ACPA plaintiff to establish in rem jurisdiction by filing a complaint in a judicial district not contemplated by subsection (d)(2)(A) and then unilaterally seeking to effect a transfer of legal situs to that district. Cf. R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943 (4th Cir.1999) (holding that when a res is not in the court's actual or constructive possession, traditional principles of in rem jurisdiction dictate that the court may not adjudicate rights to the res and effectively bind others who may have possession); see also Restatement (Second) of Conflicts of Laws § 60 cmt. d (1971) ("A State will not usually exercise judicial jurisdiction to affect interests in a chattel brought into its territory without the consent of the owner....").
 
 
 44
 It follows that, in the present case, Mattel's unauthorized arrangement to have registrar's certificates for captainbarbie.com and the other Domain Names transferred from Maryland, Virginia, and California for deposit with the Southern District of New York was an inappropriate and ineffectual method of establishing in rem jurisdiction under the ACPA. Cf. Greatdomains.Com, 177 F.Supp.2d at 659 (holding an ACPA plaintiff's actions "insufficient" to establish in rem jurisdiction and to "satisfy the fairness requirements of the Constitution" where "[t]he only connection between the domain names and the forum... is that the domain names have been `brought' into the forum by [plaintiff] to facilitate its convenience in litigating the matter"). Simply put, Mattel attempted to create jurisdiction in a judicial district where the disputed property or its legal situs was not voluntarily or legitimately located for purposes of in rem jurisdiction.
 
 
 45
 In sum, we hold that the ACPA's basic in rem jurisdictional grant, contained in subsection (d)(2)(A), contemplates exclusively a judicial district within which the registrar or other domain-name authority is located. A plaintiff must initiate an in rem action by filing a complaint in that judicial district and no other. Upon receiving proper written notification that the complaint has been filed, the domain-name authority must deposit with the court documentation "sufficient to establish the court's control and authority regarding the disposition of ... the domain name," as required by subsection (d)(2)(D). This combination of filing and depositing rules encompasses the basic, mandatory procedure for bringing and maintaining an in rem action under the ACPA. Subsection (d)(2)(C) contributes to this scheme by descriptively summarizing the domain name's legal situs as established and defined in the procedures set forth in subsections (d)(2)(A) and (d)(2)(D). Accordingly, we affirm the district court's conclusion that it did not have in rem jurisdiction over the Domain Names in this action.
 
 IV. Waiver and Transfer
 
 46
 Mattel asks us to determine whether captainbarbie.com and mattle.com waived objections to in rem jurisdiction in the Southern District by failing to raise that defense in their answers. Mattel also seeks a determination of whether the district court abused its discretion in failing to order transfer of the various in rem actions to the proper district courts. These issues, however, were neither presented to nor expressly ruled on by the district court. "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." Greene v. United States, 13 F.3d 577, 586 (2d Cir.1994); see also Gurary v. Winehouse, 190 F.3d 37, 44 (2d Cir.1999) ("Having failed to make the present argument to the district court, plaintiff will not be heard to advance it here."). Mattel did not raise issues of waiver or transfer at the preliminary conference below, and it arguably abandoned these issues by choosing to devote its April 13, 2000 brief to matters plainly unrelated to the substantive dispute over in rem jurisdiction. Although we may exercise our discretion to consider a newly-raised issue when, for example, "we think it necessary to remedy an obvious injustice," Greene, 13 F.3d at 586, we see no injustice in refusing to consider issues that Mattel strategically sidestepped below.
 
 
 47
 Were we to address the waiver and transfer issues on the merits, however, we would still reject Mattel's arguments as a matter of law. Assuming, without deciding, that objections to in rem jurisdiction under the ACPA can be waived through failure to raise that defense "by motion under [Rule 12 or] in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course,"[15] Fed.R.Civ.P. 12(h)(1), we would conclude that captainbarbie.com and mattle.com did not waive objections to in rem jurisdiction.
 
 
 48
 This Court has observed that, to preserve the defense of lack of personal jurisdiction, a defendant need only state the defense in its first responsive filing and need not articulate the defense with any rigorous degree of specificity. Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 730 (2d Cir.1998). Captainbarbie.com substantially satisfied this standard when it asserted its challenge to in rem jurisdiction explicitly and vigorously at the preliminary conference on March 30, 2001, almost two weeks before the date (April 10) that Mattel and captainbarbie.com had agreed on as the deadline for answering. Moreover, immediately after the court announced April 13 as the date for submission of Mattel's brief addressing the issue of in rem jurisdiction, counsel for captainbarbie.com offered to address that issue on April 13 in "a motion to dismiss in lieu of an answer or would the court prefer that we answer [by April 10, as agreed] and submit on the 13th on the issue of jurisdiction?" The court responded by discouraging captainbarbie.com from addressing the jurisdictional issue until "plaintiff and [the court] take a first cut [in Mattel's brief-in-chief to be submitted on April 13]." The court also assured captainbarbie.com that its right "to submit something to me thereafter" would be "preserv[ed]."
 
 
 49
 Furthermore, unlike Mattel, which chose to discuss subject matter jurisdiction in its April 13, 2000 brief in disregard of the issue of in rem jurisdiction that clearly was of concern to the court, captainbarbie.com followed the court's instructions by discussing in rem jurisdiction in its April 17 response brief — an act that Mattel would now have us construe as a waiver. Neither fairness nor common sense would permit such a result in these circumstances. Cf. Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 60-61 (2d Cir.1999) (observing that in determining whether waiver or forfeiture of objections to personal jurisdiction has occurred, "we consider all of the relevant circumstances").
 
 
 50
 Unlike captainbarbie.com, mattle.com answered Mattel's complaint prior to the preliminary conference. Paragraph 1 of Mattel's complaint stated simply that Mattel was bringing "this in rem action" under the ACPA, while Paragraphs 2 and 3 explicitly set forth statutory bases for subject matter jurisdiction and venue, respectively. In response to these paragraphs, and to Paragraph 4, which described Mattel's business locations, mattle.com's answer stated: "Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 1 through 4 of this complaint, except admits that Mattel purports to assert claims for relief arising under 15 U.S.C. § 1125(d) and respectfully refers questions of law regarding jurisdiction and venue to this Court."
 
 
 51
 Although the nature of any objections it may have had is unclear, mattle.com's answer clearly fell short of admitting Mattel's allegations regarding jurisdiction and venue, and specifically referred the issue of in rem jurisdiction to the district court. Moreover, Mattel's complaint did not set forth a factual basis for the exercise of in rem jurisdiction, and thus there was no specific factual allegation to which mattle.com could have replied. Under more typical circumstances, a court might be concerned that mattle.com failed properly to preserve the jurisdictional defense by including insufficient specificity in its answer. Under the present circumstances, however, which include uncertainty over whether objections to in rem jurisdiction under the ACPA are subject to waiver under Rule 12(h), we would conclude that mattle.com did not waive this defense.
 
 
 52
 Similarly, the district court did not err or abuse its discretion in failing to order transfer of the in rem action. Transfer of a case for the convenience of the parties or to cure defects of venue or jurisdiction may be ordered by the court if such transfer is "in the interest of justice." 28 U.S.C. §§ 1404(a), 1406(a), 1631. Here, transfer would not be in the interest of justice. Mattel had notice and opportunity, both before and after the district court entered its first order on May 2, 2001, to make arguments opposing dismissal for lack of in rem jurisdiction. That Mattel chose a different strategy is now past cure.
 
 CONCLUSION
 
 53
 For the foregoing reasons, we affirm the district court's dismissal of Mattel's action against captainbarbie.com, mattle.com, and the other Domain Names for lack of in rem jurisdiction under the ACPA.
 
 
 
 Notes:
 
 
 [1]
 Section 1125(d)(2), to which we refer throughout this opinion, reads, in relevant part:
 (2)(A) The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if
 (i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c) of this section; and
 (ii) the court finds that the owner —
 (I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or
 (II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by —
 (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and
 (bb) publishing notice of the action as the court may direct promptly after filing the action.
 (B) The actions under subparagraph (A)(ii) shall constitute service of process.
 (C) In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which
 (i) the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; or
 (ii) documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court.
 (D)(i) The remedies in an in rem action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. [U]pon receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a mark in a United States district court under this paragraph, the domain name registrar, domain name registry, or other domain name authority shall
 (I) expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and
 (II) not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court.
 (ii) The domain name registrar or registry or other domain name authority shall not be liable for injunctive or monetary relief under this paragraph except in the case of bad faith or reckless disregard, which includes a willful failure to comply with any such court order. [...]
 
 
 [2]
 A domain name "registrar" is one of several entities licensed by the Internet Corporation of Assigned Names and Numbers ("ICANN") to grant domain names to applicants, or "registrants." David Bender,Computer Law § 3D.03[3] at 3D-56 (updated to 2000). The domain name "registry," by contrast, is the single official entity that maintains a list ("a registry") of all "top-level" domain names and that maintains all official records regarding the registrations of such names. Id.
 
 
 [3]
 The precise location of captainbarbie.com's registrar is not entirely clear. Mattel states that the registrar is Alabanza, Inc., which has its principal office in Bethesda, Maryland. Captainbarbie.com states that the registrar is BulkRegister.com, "a Maryland corporation with offices in Baltimore." Apparently, Alabanza, Inc. and BulkRegister.com are related entities or the same entity, as the "registrar's certificate" in this case refers to the registrar as "Alabanza, Inc. and/or BulkRegister.com." Whether captainbarbie.com is registered in Baltimore or Bethesda is immaterial to this appeal
 
 
 [4]
 The ACPA was less than a year old when Mattel filed this action in the Southern District. During the preliminary conference, the district judge observed that this case would be "my first litigated cybersquatting case."
 
 
 [5]
 In the same opinion, the district court ordered Mattel to show cause why a consent judgment previously entered against four other defendants (matellsoftware.com, matellsoftware.net, matellsoftware.org, and masteroftheuniverse.com) should not now be vacated. Mattel, Inc., 2001 WL 436207, at *3. Mattel responded by pointing out that these defendant domain names were all registered through Register.com, located in New York City within the Southern District of New York. Accordingly, the district court entered a second order on May 17, 2001, indicating that the consent judgment entered as to these defendants would not be vacated. These four domain names therefore are not participating in this appeal
 
 
 [6]
 The district court did not indicate why personal jurisdiction could not be obtained over an Australian company that had registered a domain name in the United States, and the parties do not address this issue on appeal. Other courts have expressly or tacitly found that ACPA plaintiffs could not obtain personal jurisdiction over non-U.S. persons or entities whose only contact with the United States was registering a domain name hereSee, e.g., Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 223 (4th Cir.2002) (stating that a Buenos Aires company's "mere act of registering the Domain Names in Virginia was deemed insufficient to provide personal jurisdiction over [the company]"); FleetBoston, 138 F.Supp.2d at 122 (noting that "plaintiff concedes [that a Brazilian resident] has had no apparent contact with the United States (other than registering the domain name) and is said not to be amenable to conventional process in any United States jurisdiction"). We need not reach this issue in the present case.
 
 
 [7]
 Congress clearly intended to treat domain names as property for purposes of the ACPA'sin rem provisions. See 145 Cong. Rec. at H10,826 ("[T]his [in rem] jurisdiction does not offend due process, since the property and only the property is the subject of the jurisdiction, not other substantive personal rights of any individual defendant."); see also Porsche Cars N. Am., 302 F.3d at 260 ("Congress may treat a domain name registration as property subject to in rem jurisdiction if it chooses, without violating the Constitution."); Caesars World, Inc. v. Caesars-Palace.Com, 112 F.Supp.2d 502, 504 (E.D.Va.2000) ("There is no prohibition on a legislative body making something property. Even if a domain name is no more than data, Congress can make data property and assign its place of registration as its situs.").
 
 
 [8]
 The Supreme Court has distinguished among the various types of civil actions: "A judgmentin personam imposes a personal liability or obligation on one person in favor of another. A judgment in rem affects the interests of all persons in designated property. A judgment quasi in rem affects the interests of particular persons in designated property. The latter is of two types. In one the plaintiff is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons. In the other the plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him." Hanson v. Denckla, 357 U.S. 235, 246 n. 12, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). It is the second type of quasi in rem jurisdiction that has been found to present the most significant due process concerns, because "[t]hese are cases where the property which ... serves as the basis for state-court jurisdiction is completely unrelated to the plaintiff's cause of action." Shaffer, 433 U.S. at 208-09, 97 S.Ct. 2569. In rem jurisdiction under the ACPA most closely resembles what Hanson refers to as a "judgment in rem" or perhaps the first type of "judgment quasi in rem."
 
 
 [9]
 Various district courts have similarly rejected the broad claim that subsection (d)(2)(C) "was intended as an alternative [basis] for assertingin rem jurisdiction over domain names." Standing Stone Media, 193 F.Supp.2d at 533; see also Cable News Network, 162 F.Supp.2d at 489 n. 15 (holding that subsection (d)(2)(c) "does not confer in rem jurisdiction"); FleetBoston, 138 F.Supp.2d at 135 (holding that "the situs language in subparagraph (2)(C) does not enable a plaintiff to bring an in rem action in a forum other than one specified in subparagraph (2)(A)"); cf. Ford Motor Co. v. Greatdomains.Com, Inc., 177 F.Supp.2d 656, 658-59 (E.D.Mich.2001) ("It is unnecessary for the court to determine whether § 1125(d)(2)(C) was intended as an alternative authorization for asserting in rem jurisdiction over domain names, because — assuming that it is — jurisdiction is precluded by the Constitution's due process requirements.") (citing Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)).
 
 
 [10]
 The legislative history sheds no light on Congress's selection of "or" to conjoin subsections (d)(2)(C)(i) and (d)(2)(C)(ii). Instead, congressional statements simply repeat the "or" without further discussionSee, e.g., 145 Cong. Rec. at S14,714.
 
 
 [11]
 We offer these hypothetical scenarios by way of suggesting that, contrary to Mattel's contention, subsection (d)(2)(C) would not be rendered meaningless or superfluous by our interpretation of subsection (d)(2)(A). We do not decide today, however, any questions with respect to the scope of subsection (d)(2)(C)
 
 
 [12]
 Potential delays between the filing of a complaint and the depositing of domain-name documentation make such a scenario possible, despite the ACPA's prohibition of transfers of the domain namependente lite. See 15 U.S.C. § 1125(d)(2)(D)(i)(II) (stating that a domain-name authority "shall not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court"). In the present case, Mattel filed its action on November 15, 2000. The various domain-name authorities filed registrar's certificates with the district court on December 4, 2000, December 20, 2000, and February 5, 2001.
 
 
 [13]
 Subsections (d)(2)(A) and (d)(2)(C) of the ACPA thus combine to reaffirm the venerable principle thatin rem jurisdiction depends upon a court's initially, but not necessarily continuously, having control of the physical res. See Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 88-89, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992) ("We hold that, in an in rem forfeiture action, the Court of Appeals is not divested of jurisdiction by the prevailing party's transfer of the res from the district."). Noting that the in rem rules had their origin in admiralty law, where a court established its jurisdiction by seizure, the Supreme Court found that "the court must have actual or constructive control of the res when an in rem forfeiture is initiated." Id. at 87, 113 S.Ct. 554 (emphasis added); cf. The Palmyra, 25 U.S. (12 Wheat.) 1, 10, 6 L.Ed. 531 (1827) (Story, J.) ("Whenever a stipulation [bond] is taken in an admiralty suit, for the property subjected to legal process and condemnation, the stipulation is deemed a mere substitute for the thing itself, and the stipulators liable to the exercise of all those authorities on the part of the Court, which it could properly exercise, if the thing itself were still in its custody.").
 
 
 [14]
 A domain name's registrar and registry can sometimes be distinct entities. "A `registry' is the single official entity that maintains all official records regarding registrations in the TLD [top level domain].... A registrar is one of several entities, for a given TLD, that is authorized ... to grant registration of domain names to registrants. The registrants transmit their registration information to the registry."FleetBoston, 138 F.Supp.2d at 123 n. 2 (quoting David Bender, Computer Law § 3D.03[3], at 3D-56 (updated to 2000)).
 
 
 [15]
 To date, no court has directly addressed whether a defendant domain name in an ACPA action may waive objections toin rem jurisdiction, although the Fourth Circuit has intimated that in rem jurisdiction, like in personam jurisdiction, may be waived under the ACPA. See Porsche Cars N. Am., 302 F.3d at 255-57. The parties and the district court in the present case expressed some uncertainty over whether objections to in rem jurisdiction under the ACPA can be waived. At the preliminary conference, for example, captainbarbie.com's counsel argued that Mattel's interpretation of § 1125(d) incorrectly invoked the "subject matter jurisdiction [sic] of the court and I don't believe that that is an issue that even if we wanted to we could waive or stipulate to." Later, Judge Cote stated that "[the] issue of subject matter jurisdiction [sic] is one that I must satisfy myself to." The parties' inaccurate use of the term "subject matter jurisdiction" likely reflected confusion over a statute that effectively concentrates subject matter jurisdiction, in rem jurisdiction, and venue in a single district court.